UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANDREW B. LEWIS                                 CIVIL ACTION

VERSUS

NICHOLAS LOCICERO,                     NO.: 15-00129-BAJ-RLB
ET AL.

## RULING AND ORDER

Before the Court is a **Motion for Summary Judgment (Doc. 39)** filed by Livingston Parish Sheriff Jason Ard and a **Motion for Summary Judgment (Doc. 40)** filed by Deputy Nicholas LoCicero. Both Sheriff Ard and Deputy LoCicero ("Defendants") seek an order dismissing Andrew Lewis' ("Plaintiff") claims in their entirety. Also before the Court is a **Motion for Partial Summary Judgment (Doc. 41)** filed by Plaintiff, seeking a finding that Deputy LoCicero is liable under 42 U.S.C. § 1983 because he arrested Plaintiff without probable cause. Each party has filed an opposition (Docs. 48 and 53), and replies where applicable (Docs. 57 and 58). For reasons explained fully herein, Sheriff Ard's **Motion for Summary Judgement (Doc. 39)** is GRANTED IN PART AND DENIED IN PART. Deputy LoCicero's **Motion for Summary Judgment** is GRANTED IN PART AND DENIED IN PART (Doc. 40), and Plaintiff's **Motion for Partial Summary Judgment (Doc. 41)** is DENIED.

I. BACKGROUND

Plaintiff alleges that on March 6, 2014, he stopped at a Walmart store in Denham Springs, Louisiana to purchase some supplies. (Doc. 35 at ¶ 16). After stopping, Plaintiff fell asleep in the parking lot in his truck, and at around 1:12 AM, Deputy LoCicero of the Livingston Parish Sheriff's Office woke him up. *Id.* at ¶ 17. Plaintiff avers that Deputy LoCicero then searched his truck without reasonable cause and found three Concerta pills. *Id.* at ¶¶ 18, 20. Concerta is a prescription drug that treats attention deficit hyperactivity disorder ("ADD"). *Id.* at ¶ 21. It is a controlled substance under Louisiana law. La. R.S. § 40:964(A)(C)(4). Plaintiff alleges that he had a prescription, but that he could not locate it. (Doc. 35. at ¶ 20). As a result, Deputy LoCicero arrested him for possession of a controlled substance. *Id.* at ¶ 23.

The next day, Plaintiff alleges that he was released on bail and went to work at Greystone Golf, LLC at 6:00 am. *Id.* at ¶ 26-28. He alleges that after his release, Sheriff Ard and Deputy LoCicero tried to convince Derek Lockhart, his supervisor at Greystone Golf, to fire him because he was a drug dealer. *Id.* at ¶ 29. Plaintiff alleges that Mr. Lockhart and Sheriff Ard are friends. *Id.* at ¶ 29(A). Mr. Lockhart suspended Plaintiff on March 11, 2014. *Id.* at ¶ 30. Plaintiff alleges that Mr. Lockhart and Greystone Golf also fired him because he took prescription medication for his ADD and treated him differently based on a disability. *Id.* at ¶ 37(A).

Plaintiff filed the instant action on March 6, 2015, against Deputy LoCicero, individually; Sheriff Ard, individually and officially; Derek Lockhart; and Greystone

Golf. (Doc. 35). Plaintiff brings this action against Mr. Lockhart and Greystone Golf under 42 U.S.C. §§ 1983 and 1988, Americans with Disabilities Act, 42 U.S.C. § 12101, and La. R.S. 23:301. *Id.* at ¶ 1. Plaintiff brings this action against Deputy LoCicero and Sheriff Ard under 42 U.S.C. §§ 1983 and 1988 for violating his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Doc. 35 at ¶ 1).

On February 29, 2016, the Court dismissed all of Plaintiff's claims against Derek Lockhart and Greystone Golf under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 26). On December 30, 2016, Defendants filed motions for summary judgment, (Docs. 39 and 40), and Plaintiff filed a cross-motion for partial summary judgment, (Doc. 41). On March 27, 2017 the Court heard oral argument. (Doc. 61).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v.*

*Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## II. DISCUSSION

### A. Plaintiff's § 1983 Official Capacity Claims

A § 1983 suit against a government official, like a police officer, in his official capacity cannot be based on a theory of vicarious liability. *Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999). Rather, § 1983 liability for a

government official sued in his official capacity requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017) (internal citation omitted). Further, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff[,]" in order for the necessary determination to be made on the policy's relative constitutionality." *Piotrowski v. Houston*, 237 F.3d 567, 573 (5th Cir. 2001).

1. **Sheriff Ard**

Defendant seeks summary judgment on Plaintiff's § 1983 claims against Sheriff Ard in his official capacity because Plaintiff has not identified an official policy that caused Plaintiff to suffer a constitutional violation. (Doc. 39 at p. 12-14). Plaintiff argues that it is undisputed that it is the custom of the Livingston Sheriff's Office for officers to arrest anyone who possesses a controlled substance, which can be prescribed, unless they can produce a copy of the prescription. (Docs. 41-3 at p. 6 and 48 at p. 3).[1] Sheriff Ard concedes that he is a policymaker for the Livingston Parish Sheriff's Office. (Doc. 39-2 at 12). He asserts, however, that there is a dispute about whether this is the policy of the Sheriff's Office. (Doc. 46-1 at ¶ 1). To support this assertion, he cites his own deposition testimony, where he admits that it is the

---

[1] Sheriff Ard argues that the Court should not consider this claim because it is outside the scope of the complaint. (Doc. 39-2 at p. 13). The U.S. Court of Appeals for the Fifth Circuit has indicated that "[t]he formal issues framed by the pleadings are not controlling on a motion for summary judgment" and that "the court must consider the issues presented by other material offered by the parties[.]" *Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.*, 744 F.2d 1077, 1079 n.4 (5th Cir. 1984).

5

practice of officers to write down anything the suspect says. (Docs. 46 at ¶ 1 and 46-3). He does not address any general policies about whether officers consider these statements in making probable cause determinations. Sheriff Ard therefore has not shown that there is a genuine dispute of material fact about the existence of the policy. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record[.]"). The only question then is whether the undisputed policy was the moving force behind a constitutional violation. *See Quinn*, 863 F.3d 353 at 364.

Officers must consider the totality of the circumstances in making a probable cause determination. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). Relatedly, the Fifth Circuit has held that police "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). The court, however, has declined to decide if this means evidence supporting an affirmative defense may be relevant to probable cause. *Piazza v. Mayne*, 218 F.3d 239, 246-7 (5th Cir. 2000); *U.S. v. Craig*, 381 Fed. Appx. 459, 461 (5th Cir. 2010). Several other circuits have held that it is relevant to a probable cause determination. *See Hodgkins ex rel Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004); *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

The Court need not resolve this issue because Deputy LoCicero had probable cause to arrest Plaintiff even if Deputy LoCicero had considered Plaintiff's assertion that he had a prescription. A mere assertion of an affirmative defense does not negate

6

probable cause. Only conclusively established facts may negate probable cause. *See Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 897 (3d Cir. 2016); *Hodgkins ex rel. Hodgkins*, 355 F.3d 1048 at 1061. Take, for example, a person suspected of murder. Under Plaintiff's theory, the police would lack probable cause if the suspect asserted that he acted in self-defense. And here, if Plaintiff were correct, a person suspected of possessing a controlled substance could assert that they had a prescription for the drug and the police would lack probable cause to arrest him. The Court must therefore dismiss Plaintiff's § 1983 claim against Sheriff Ard in his official capacity.

**B. Plaintiff's § 1983 Individual Capacity Claims**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated a clearly established statutory or constitutional right and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The Fifth Circuit has held that even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified

7

immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

### 1. Sheriff Ard

Sheriff Ard seeks summary judgment on Plaintiff's § 1983 claims against him in his individual capacity. (Doc. 39-2 at p. 8). Plaintiff claims that Sheriff Ard spread false rumors that he was involved in drug dealing depriving him of the right to liberty, the right to contract for employment because he lost his job, and the right to be free from defamation and slander. (Doc. 35 at ¶ 34). The right to liberty includes the right to be free from false imprisonment. *See Loustalot v. Rice*, 764 F. Supp. 1080, 1083 n.1 (M.D. La. 1991). As discussed *infra* the arrest of Plaintiff was lawful. Plaintiff also concedes that he does not have a claim against Sheriff Ard for the loss of his employment because of the Court's previous ruling that Plaintiff does not have a due process property right in his employment at Greystone. (Doc. 48-4). Finally, plaintiff does not have a constitutional right to be free from defamation because it is not a constitutional tort. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999), *rev'd on other grounds*, 352 F.3d 939, 949 (5th Cir. 2003). Plaintiff's claims against Sheriff Ard in his individual capacity under § 1983 must therefore be dismissed.

### 2. Deputy LoCicero

Plaintiff claims that Deputy LoCicero unlawfully searched, seized, and arrested him in violation of the Fourth Amendment, (Doc. 53 at p. 6), and that the seizure of his cash and prescription drugs violated his Fourth and Fifth Amendment

rights. (Doc. 35 at ¶ 32). He also alleges that Deputy LoCicero violated his Fifth, Eighth, and Fourteenth Amendment rights because Deputy LoCicero put him in jail for a crime he did not commit, (Doc. 35 at ¶ 33), but Plaintiff has now abandoned these claims because he failed to address them in his opposition to Deputy LoCicero's Motion for Summary Judgment, (Doc. 53).[2] *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989) ("[E]ven a pleaded theory was waived when it was not raised in opposition to a motion for summary judgment.").

### i. Search and Seizure

Deputy LoCicero seeks summary judgment on Plaintiff's claim that he searched and seized him without probable cause. (Doc. 40-2 at p. 8-14). Defendant argues that he had probable cause to search and seize Plaintiff and his truck because the undisputed facts establish that Plaintiff was slumped over his steering wheel late at night in a Walmart parking lot and that throughout the encounter Plaintiff appeared intoxicated. (Doc. 40-2 at p. 9-10). Deputy LoCicero was aware that a drug-related death had recently occurred in the same parking lot, and he had been instructed to conduct routine patrols of the area. *Id.* at p. 9. He also avers that he saw empty Suboxone wrappers, an opioid dependency drug, in plain view through the window when he approached Plaintiff's car, (Doc. 58 at p. 3), and that Plaintiff consented to a search of his vehicle, (Doc. 40-1 at ¶ 9).

Plaintiff contends that the facts taken in the light most favorable to him establish only that Deputy LoCicero had been instructed to conduct routine patrols

---

[2] Plaintiff's Opposition focuses solely on alleged Fourth Amendment violations and state law claims. (Doc. 53).

9

of a Walmart parking lot after a heroin overdose occurred in the parking lot, (Docs. 40-1 at ¶ 2 and 47-1 at ¶ 3), and that while patrolling the parking lot, he saw Plaintiff asleep in his truck at 1:00 AM. (Docs. 47-1 at ¶ 1 and 40-1 at ¶ 1). Deputy LoCicero then woke Plaintiff up, (Doc. 53 at p. 8), and then searched Plaintiff's truck, (Docs. 47-1 at ¶ 10 and 40-1 at ¶ 1). Plaintiff shows that there is a genuine dispute of material fact about whether he consented to the search and whether he appeared intoxicated by citing to his own deposition testimony, where he stated that he did not consent, (Doc. 53 at p. 7), and that there were no Suboxone wrappers in his truck because had recently cleaned it, *Id.* at p. 110. He also establishes a genuine dispute of material fact about whether he appeared intoxicated because he denied being intoxicated and cites to expert testimony that the symptoms of being intoxicated, including slurred speech, can be similar to being groggy from waking up. (Doc. 47-1 at ¶ 4). Consequently, a material dispute of fact exists regarding whether Plaintiff consented to the search, appeared intoxicated, and whether Deputy LoCicero saw empty Suboxone wrappers in plain view. As such, Defendant is not entitled to summary judgment on Plaintiff's unlawful search and seizure claims.

ii. Arrest[3]

Deputy LoCicero and Plaintiff cross-move for summary judgment on Plaintiff's claim that he was arrested without probable cause. (Docs. 40-2 at p. 11-14 and 41). The relevant facts are undisputed. As previously noted, while searching Plaintiff's

---

[3] The fact that the Court finds there is a material dispute of fact about whether the initial search and seizure were unlawful does not mean that the evidence obtained during the search must be excluded for the purposes of the false arrest analysis because the exclusionary rule does not apply in civil cases. *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997).

truck, Deputy LoCicero found two syringes, several empty Suboxone wrappers, and a Lamitrin pill bottle containing three pills of Concerta. (Docs. 40-1 at ¶ 10 and 47-1 at ¶ 10). Deputy LoCicero asked Plaintiff to produce a prescription for the Concerta, (Docs. 40-1 at ¶ 12 and 47-1 ¶ 12), but Plaintiff could not do so. (Docs. 40-1 at ¶ 12 and 47-1 ¶ 12). Plaintiff, however, told Deputy LoCicero that he had a prescription for the Concerta. (Docs. 41-2 at ¶ 6 and 46-1). Deputy LoCicero then arrested him for possession of a controlled substance. (Docs. 41-2 at ¶ 1-2 and 46-1). Plaintiff, however, did have a valid prescription for the Concerta, and later produced it to the district attorney. (Docs. 41-2 at ¶ 1-5 and 46-1). The charge was dismissed several months later. *Id.*

Plaintiff argues that the decision to arrest him, even though he claimed to have a valid prescription, violated his constitutional rights. (Doc. 41-3 at p. 14-15). In a § 1983 action alleging false arrest, courts "look to the totality of the circumstances to determine whether probable cause, or . . . arguable probable cause, existed." *Mendenhall*, 213 F.3d at 231 (citing *Illinois v. Gates*, 462 U.S. 213, 241 (1983)). Relatedly, the Fifth Circuit has held that police "may not disregard facts tending to dissipate probable cause." *Bigford*, 834 F.2d at 1218. The Fifth Circuit, however, has declined to decide whether police "must consider facts establishing an affirmative defense" in determining probable cause. *See Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000); *United States v. Craig*, 381 F. App'x 459, 461 (5th Cir. 2010). It is thus not clearly established that an officer must consider an affirmative defense—such as

that a person claims he has a valid prescription—when determining whether there is probable cause.

Moreover, Louisiana law contemplates that police may arrest people who possess a controlled substance but cannot produce a prescription for that substance. La R.S. § 40:991(A). The relevant statute states that "[a]n individual who claims possession of a valid prescription for any controlled dangerous substance as a defense . . . shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office." *Id.* Thus it appears that it is not objectively unreasonable for an officer to arrest someone who cannot provide a prescription for a controlled substance. And as discussed *supra*, even if Deputy LoCicero had considered Plaintiff's assertion that he had a prescription, there would still have been probable cause for his arrest. The Court will therefore grant Deputy LoCicero's Motion for Summary Judgment and deny Plaintiff's cross-motion for summary judgment on Plaintiff's claims that Deputy LoCicero lacked probable cause to arrest Plaintiff.[4]

### iii. Seizure of Plaintiff's Cash and Other Property

Defendant seeks summary judgment on Plaintiff's claim that the seizure of his cash and property violated the Fourth and Fifth Amendment. (Doc. 40-2 at p. 14-16). It is undisputed that Deputy LoCicero seized cash, two syringes, several empty

---

[4] Plaintiff also claims that Deputy LoCicero further violated his constitutional rights by failing to sign the probable cause affidavit and omitting Plaintiff's assertions that he had a valid prescription from the affidavit. (41-3 at 15-18). These claims are not relevant to Plaintiff's false arrest claim because Deputy LoCicero completed the probable cause affidavit after he arrested Plaintiff. (Docs. 41-2 at ¶ 17-18 and 46-1).

12

Suboxone wrappers, and a Lamitrin pill bottle containing three pills of Concerta. (Doc. 40-1 at ¶ 10 and Doc. 47-1 ¶ 10). It is permissible for police to seize property that is evidence of a possible crime, fruit of a crime, or instrumentalities of a crime incident to an arrest. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 296 (1967). Because Deputy LoCiCero had probable cause to believe that Plaintiff possessed a controlled substance without a prescription, he was permitted to seize the related items, including cash, syringes, and Suboxone wrappers. These claims are therefore dismissed.

### C. Plaintiff's State Law Claims

#### 1. Deputy LoCicero

Plaintiff alleges several state law torts under Louisiana law, including false imprisonment and false arrest against Deputy LoCicero, (Docs. 35 at ¶ at 33 and 53 at p. 12), and defamation against Deputy LoCicero and Sheriff Ard. (Doc. 35 at ¶ 35). Under Louisiana law, "[a] claim for false arrest and false imprisonment requires the following elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 74 So.3d 1156, 1159 (La. 2011). For the reasons already explained, the undisputed facts establish that Deputy LoCicero's arrest of Plaintiff was lawful.

Louisiana law identifies five elements to establish a claim for defamation: "(1) defamatory statement concerning another; (2) falsity of the statement; (3) an unprivileged publication to a third party; (4) fault (negligence or greater) on the part of the publisher; and (5) resulting injury." *Costello v. Hardy*, 864 So.2d 129, 139 (La.

2004). Plaintiff argues that Deputy LoCicero defamed him because he texted a photo of the cash he seized from Plaintiff to Sheriff Ard who texted it to Plaintiff's supervisor, who then suspended Plaintiff. (Doc. 53 at p. 12-13). The photo of seized cash, however, is not a false statement because there is no allegation that the photo Deputy LoCicero sent Sheriff Ard was not a genuine depiction. Plaintiff therefore cannot establish that a false statement was made, which is a required element to prove defamation. The Court will therefore dismiss the state law claims against Deputy LoCicero.[5]

### 2. Sheriff Ard

Sheriff Ard seeks summary judgment on Plaintiff's claim that he is liable under Louisiana law for defamation. (Doc. 39-2 at p. 10-11). Plaintiff's defamation claim stems from his allegation that Sheriff Ard falsely told his supervisor, Derek Lockhart, that he was a suspected drug dealer, causing Mr. Lockhart to fire him. (Doc. 35 at ¶¶ 29, 35). Sheriff Ard argues that he did not make a false statement because he only told Mr. Lockhart that Plaintiff was found sleeping in his truck and that he was arrested for drug possession. (Doc. 39-2 at p. 10-11). He also argues that even if he made a false statement, he did not cause Plaintiff to be fired because Mr. Lockhart testified in his deposition that he fired Plaintiff solely because he was arrested, and it did not matter whether he was suspected of dealing drugs. *Id.* at 11.

However, the facts taken in the light most favorable to Plaintiff establish that Sheriff Ard called his long-time friend Mr. Lockhart, and told him that Plaintiff had

---

[5] Because the Court has dismissed Plaintiff's state law claims against Deputy LoCicero, Plaintiff's claim that Sheriff Ard is vicariously liable for Deputy LoCicero's violations of state law is dismissed.

been arrested and was suspected of "selling drugs." (Doc. 47-2 at 40:20-50:17). Sherriff Ard called Mr. Lockhart because at the time of Plaintiff's arrest, Plaintiff told Deputy LoCicero that he worked with Sheriff Ard's son. (Doc. 41-10 at 88:21-25). Deputy LoCicero's supervisor informed Sheriff Ard that Plaintiff had been arrested for dealing drugs and that he claimed to know the Sheriff's son. (Doc. 41-10 at 85:11-86:5).

Mr. Lockhart then confronted Plaintiff and told him that he did not want Plaintiff to work at Greystone Golf anymore because Plaintiff was caught selling drugs. (Doc. 47-2 at 41:3-11). After Plaintiff explained to Mr. Lockhart that he was arrested for possession and not distribution of a controlled substance, Mr. Lockhart said "[W]ho am I supposed to believe, you or [Sheriff] Ard, my best friend of 20 years or whatever[.]" *Id.* at 50:4-6. Plaintiff responded "You can believe this paper, Mr. Derek. It says this is what I was charged with." *Id.* at 50:9-11. Mr. Lockhart said "That's not what I was told Andy. I'm sorry, that not what I was told." *Id.* at 50:12-13.

Consequently, a material dispute of fact exists regarding whether Sheriff Ard made a false statement by telling Mr. Lockhart that Plaintiff was suspected of selling drugs. There is also a material dispute of fact about whether Derek Lockhart fired Plaintiff because he was a suspected drug dealer or merely because he was arrested. As such, Sheriff Ard is not entitled to summary judgment on Plaintiff's defamation claim.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgement (Doc. 39)** filed by Sheriff Ard is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgement (Doc. 40)** filed by Deputy LoCicero is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Doc. 41)** filed by Plaintiff is **DENIED**.

Baton Rouge, Louisiana, this 7th day of September, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA